IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                                |
|------------------------------|---|--------------------------------|
|                              | : |                                |
| TERESA DARBY                 |   |                                |
|                              | : |                                |
| v.                           | : | Civil Action No. DKC 16-0210   |
|                              | : |                                |
| PNC MORTGAGE, NATIONAL       |   |                                |
| ASSOCIATION                  | : |                                |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage loan modification case is the motion for summary judgment filed by Defendant PNC Bank, N.A. (named in the complaint as "PNC Mortgage, National Association") ("Defendant").  (ECF No. 33).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment will be granted.

I.   **Background**

A.   **Factual Background[1]**

In September 2002, Plaintiff Teresa Darby ("Plaintiff") and her ex-husband, James Darby, jointly purchased the residential real property located at 14209 Floral Park Drive, North Potomac, Maryland 20878 (the "Property").  (ECF No. 33-3, at 4).  In April 2004, Plaintiff and Mr. Darby refinanced their mortgage

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

loan (the "Loan") with National City Mortgage Co., n/k/a PNC Bank, N.A. (Defendant), in the amount of $552,000.00, secured by a deed of trust on the Property. (*Id.* at 5; ECF Nos. 33-4 ¶ 3; 36-1 ¶¶ 2-3). Plaintiff and Mr. Darby were co-owners of the Property and co-obligors on the Loan. Defendant is the mortgage loan servicer.

Plaintiff and Mr. Darby have not made a regular monthly mortgage payment since December 2012, and Defendant has advanced the necessary sums to cover the Property's taxes and insurance since that time. (ECF Nos. 33-3, at 6-7; 33-4 ¶ 4). On March 18, 2013, Plaintiff and Mr. Darby had been advised that foreclosure would proceed. (ECF No. 33-4 ¶ 6; *id.* at 16). A Notice of Intent to Foreclose was issued on May 6, 2013, and an order to docket foreclosure was filed on July 16, 2013, in the Circuit Court for Montgomery County. (*See* ECF No. 33-5).

Between November 2012 and March 2014, Plaintiff, Mr. Darby, and Defendant regularly communicated regarding loss mitigation procedures through letters and telephone calls. (ECF Nos. 33-3, at 8; 33-4 ¶¶ 5-8). Plaintiff and Mr. Darby submitted documents during this time, but never submitted a complete loss mitigation application. On February 18, 2013; March 18, 2013; March 26, 2013; April 27, 2013; July 18, 2013; December 12, 2013; and February 19, 2014, Defendant sent letters to Plaintiff and Mr. Darby advising them that they had not submitted all of the

2

necessary documents for loss mitigation to be considered. (ECF No. 33-4 ¶¶ 3-8; *id.* at 12-31).[2] Plaintiff and Mr. Darby then requested foreclosure mediation, and an initial session was held on March 18, 2014. It was unsuccessful, and another session was scheduled for April 3, 2014. (ECF No. 33-7, at 2).

Plaintiff affirms that she then submitted a loan modification application on March 21, 2014 (ECF No. 36-1 ¶ 4), but this application did not include Mr. Darby's financial information. Mr. Darby sent Defendant a letter dated March 26, stating that he no longer resided at the Property and "will not be responsible for making the payments on the home and therefore, am not providing any income or financial information for a refinance or loan modification." (ECF No. 33-4, at 33). On March 31, Defendant again informed Plaintiff and Mr. Darby that Defendant was "unable to proceed with the review of your request for assistance because you did not provide us with the requested documents." (*Id.* at 35). The parties did not reach an agreement during the second mediation session (ECF No. 33-7, at 2-3), and on April 18, 2014, the Circuit Court issued an order allowing foreclosure to proceed.

---

[2] On January 8, 2014, Defendant submitted a Final Loss Mitigation Affidavit stating that the Loan was no longer under loss mitigation analysis because of the failure to submit all required documents (ECF No. 33-6, at 2), but Defendant continued to discuss the submission of a loss mitigation application with Plaintiff and Mr. Darby following this submission.

The same day, Plaintiff filed a motion to stay the sale and dismiss the action pursuant to Maryland Rule 14-211.  Defendant agreed several times to extend the date for its response to the Rule 14-211 motion so that Plaintiff could submit a complete loss mitigation application.  Plaintiff submitted another loss mitigation application on October 17, 2014.  (ECF No. 36-1 ¶ 5).  Defendant identified additional documents needed for the application to be considered complete, relating to a second mortgage on the Property and to Mr. Darby.  (*Id.* ¶¶ 6-9; ECF No. 33-4 ¶ 13; *id.* at 37-38).  Defendant informed Plaintiff that she needed to submit a separation agreement or divorce decree and a quit claim deed if Mr. Darby would not cooperate with the application.  Plaintiff's counsel informed Defendant that Mr. Darby did "not have the wherewithal to execute a separation agreement."  (EF No. 33-8, at 2).  Without the documents, the loss mitigation review was again closed due to an incomplete submission on December 8.  (ECF No. 33-4 ¶ 13).  On February 5, 2015, Defendant responded to Plaintiff's Rule 14-211 motion. Plaintiff's request to dismiss the foreclosure case was denied by the Circuit Court following a hearing, but her request for a stay was granted with the condition that she make monthly loan payments.

Plaintiff secured a final divorce decree on July 7, 2015, and submitted a complete loss mitigation application in August

2015.[3]  (*See* ECF No. 33-4 ¶ 14).  Defendant reviewed Plaintiff's complete loan modification application and denied it on August 18, 2015.  (*Id.* ¶ 14; *id.* at 40-43).  Plaintiff requested an appeal of the denial on August 26.  (*Id.* ¶ 15; ECF No. 36-1 ¶ 12).  Upon receipt of Plaintiff's appeal letter, Defendant concluded that Plaintiff did not have appeal rights because the Property was not owner-occupied.  On August 12, 2014, Defendant had engaged a vendor to conduct an inspection of the Property as part of its routine administration of mortgage loans in default. (ECF No. 33-4 ¶ 12).  The vendor reported that someone residing at the Property advised that it was occupied by someone other than Plaintiff or Mr. Darby, and Defendant recorded the Property as non-owner occupied.  (*Id.*).  Although Defendant determined in August 2015 that Plaintiff did not have a right to an appeal, it conducted an independent review of the application and concluded that the denial was correctly decided.  (ECF No. 33-4 ¶ 15). There is no evidence that Plaintiff received notice of the appeal determination.  (ECF No. 36-1 ¶ 13).

Because Plaintiff failed to make any of the loan payments required by the stay, the stay was vacated on August 14, 2015. Plaintiff filed an appeal of the decisions related to her Rule

---

[3] Neither party identifies the date of this application, but they agree that it was a complete loan modification application, and Plaintiff does not challenge the timeliness of Defendant's response.

14-211 motion to the Maryland Court of Special Appeals on October 20, which remains pending. A foreclosure sale was set for November 20, but Plaintiff filed a Chapter 13 bankruptcy petition on November 19 to prevent the sale. (ECF No. 33-3, at 15). After Defendant obtained lift-stay relief from the bankruptcy court, Plaintiff requested a stay of the foreclosure sale pending the appeal to the Court of Special Appeals, which the Circuit Court granted on June 2, 2016.

###### B.   Procedural Background

Plaintiff commenced this action in the Circuit Court for Montgomery County on December 14, 2015. Defendant removed the case to this court on January 21, 2016. (ECF No. 1). Plaintiff advances three counts against Defendant for: violation of 12 C.F.R. § 1024.41, a regulation under the Real Estate Settlements Procedures Act ("RESPA") concerning loss mitigation procedures, because Defendant allegedly did not properly consider her loan modification applications or her appeal (Count I); violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, 5564 (Count II); and deceptive trade practices in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (Count III). (ECF No. 2 ¶¶ 69-99). Plaintiff's complaint seeks injunctive relief, monetary damages, and attorney's fees.

Discovery closed on July 27, 2016. (ECF No. 24). Defendant filed a motion for summary judgment on August 26, 2016. (ECF No. 33). Plaintiff responded in opposition (ECF No. 36), and Defendant replied (ECF No. 37).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. If the nonmoving

party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof, however, then there is no genuine dispute of material fact. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). In other words, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted); *see Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). At the same time, the court must construe the facts that are presented in the light most favorable to the

party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

### A.   Count I, Real Estate Settlements Procedures Act

Count I of Plaintiff's complaint asserts a claim under 12 C.F.R. § 1024.41, a regulation regarding loss mitigation procedures that is enforceable by borrowers pursuant to section 6(f) of RESPA, 12 U.S.C. § 2605(f). (ECF No. 2 ¶¶ 69-80). RESPA allows a borrower to receive actual damages caused by a violation of the procedures upon proof of a violation, and allows courts to award statutory damages upon proof of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1)(A)-(B).

Plaintiff identifies three "loan modification circumstances" in which she alleges that Defendant violated RESPA: Plaintiff's March 2014 loss mitigation submission; Plaintiff's October 2014 loss mitigation submission; and Plaintiff's August 2015 loan modification application. (ECF No. 36, at 2-6). Although it is Plaintiff's responsibility to confront a summary judgment motion with an evidentiary showing that there is a genuine issue for trial, *see Ross*, 899 F.Supp.2d at 420, the majority of Plaintiff's response to Defendant's motion for summary judgment is a recitation of her complaint, unsupported by any citations to the record. (*Compare* ECF No. 36, at 2-6, *with* ECF No. 2 ¶¶ 54-68).

Plaintiff must show evidence of a pattern or practice of noncompliance or actual damages. Plaintiff requested statutory damages in her complaint (*see* ECF No. 2, at 27), but has conceded Defendant's argument on this point (ECF No. 33-1, at 11-13), by failing to respond in her opposition brief. Defendant also argues that Plaintiff has not shown evidence of actual damages. (*Id.*). Plaintiff argues that her damages are her attorney's fees and expenses related to the foreclosure action. (ECF No. 36, at 6-7). She affirms, "As to damages, I have incurred significant attorney fees as a result of Defendant's failures to properly respond to my numerous loan modification applications, which I understand should have been approved." (ECF No. 36-1 ¶ 15).[4] Plaintiff also submits an affidavit from her attorney, which states that he has incurred more than $28,000 in fees and expenses "on the above-captioned case from April 14, 2014 through August 31, 2016." (ECF No. 36-

---

[4] Although not alleged in her complaint or cited in her response to Defendant's motion for summary judgment, Plaintiff's affidavit also notes "the costs, shame, and embarrassment of filing bankruptcy," and affirms, "I can't adequately express the stress this has taken on my life." (ECF No. 36-1 ¶¶ 16-17). While actual damages under RESPA may include emotional distress, Plaintiff has shown no plausible causal connection between her emotional damages and the alleged RESPA violations. *See Zaychick v. Bank of Am., N.A.*, 146 F.Supp.3d 1273, 1280-81 (S.D.Fla. 2015); *Offiah v. Bank of Am., N.A.*, No. DKC-13-2261, 2014 WL 4295020, at *4 (D.Md. Aug. 29, 2014) ("Plaintiffs' conclusory assertion that they suffered 'anxiety, depression, and stress as a direct and proximate result of illegal conduct of [Bank of America]' is insufficient to allege actual damages under RESPA." (alteration in original)).

2, at 1).   This affidavit does not differentiate between the fees and expenses incurred in the foreclosure action and those incurred in this action, which was filed in December 2015.   It also fails to specify what portion of these fees was specifically related to Defendant's responses to Plaintiff's loan modification applications.   Plaintiff's argument appears to be that, if Defendant had considered her April 2014 application complete, it would have approved a loan modification at that time, and the foreclosure action would then have been dismissed, so all subsequent litigation costs are actual damages of Defendant's alleged RESPA violation.   (ECF No. 36, at 7).   Defendant argues in response that, because RESPA provides for an award of attorney's fees as costs "in addition to" actual and statutory damages, fees are not actual damages under the statute.   (ECF No. 37, at 3-4).

Plaintiff's attorney's fees and costs in this action are not actual damages, but her attorney's fees incurred in connection with the foreclosure action would not be recoverable as attorney's fees under RESPA.   *See* 12 U.S.C. § 2605(f)(3) (permitting the court to award, "in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action[.]").   Plaintiff has not shown, however, that the fees incurred in her foreclosure action are actual damages directly

11

or proximately caused by Defendant's alleged violations. Plaintiff had no legal or statutory right to a loan modification. 12 C.F.R. § 1024.41 ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option."). Moreover, she offers no evidence that (1) at the relevant times she was qualified for a loan modification, (2) she would or could have been approved without Mr. Darby's cooperation if her 2014 applications had been considered complete, or (3) the foreclosure action would have subsequently been dismissed.[5] Indeed, it is undisputed that Plaintiff was unable to submit a complete application because of Mr. Darby's refusal to cooperate with or consent to a loan modification. Because Mr. Darby was a co-owner and co-obligor, Defendant required either his cooperation and consent to any loan modification application or evidence that he had relinquished his legal rights in the Property for an application to be complete. Plaintiff offers no rebuttal to the affidavit of Defendant's representative that Defendant "could not approve Plaintiff for a loan modification without the cooperation and

---

[5] Although Plaintiff argues that the foreclosure action "should have been dismissed" (ECF No. 36, at 7), failure to grant loss mitigation in an action to foreclose on owner-occupied residential property is an available defense in Maryland foreclosure actions, see Committee note to Md. Rule 14-211, and the Circuit Court denied Plaintiff's motion to dismiss following a hearing on the merits. This court is not in a position to review that decision.

consent of her co-obligor" (ECF No. 33-4 ¶ 10), and offers no evidence to show that she could or should have been approved for a loan modification without her co-obligor.

Plaintiff incurred legal fees in the foreclosure action because she and Mr. Darby defaulted on their mortgage loan. The undisputed record shows that Defendant worked with Plaintiff and Mr. Darby for three years, regularly communicating with them about the deficiencies in their loss mitigation applications and repeatedly delaying the foreclosure proceedings to allow them to submit a complete loss mitigation application. Plaintiff has shown no evidence of actual damages caused by Defendant's alleged RESPA violations, and this court has an affirmative obligation to prevent factually unsupported claims from going to trial. *Drewitt*, 999 F.2d at 778-79. Plaintiff has not demonstrated that there is a genuine dispute of material fact on her RESPA claim, and Defendant is entitled to summary judgment.

B. **Count II, Consumer Financial Protection Act**

Count II of Plaintiff's complaint asserts claims under the CFPA. (ECF No. 2 ¶¶ 81-86). The statute states that "[i]f any person violates a Federal consumer financial law, the [Consumer Financial Protection Bureau ("CFPB")] may . . . commence a civil action against such person . . . . The [CFPB] may act in its own name and through its own attorneys in enforcing any provision of this title, rules thereunder, or any other law or regulation[.]"

12 U.S.C. § 5564(a)-(b). The right of action to enforce the CFPA rests with the CFPB; there is no language that indicates that the statute may be enforced by a private citizen. *See Rupli v. Ocwen Loan Servicing, LLC*, No. DKC-16-0181, 2016 WL 4141013, at *3 n.5 (D.Md. Aug. 4, 2016); *Kalisz v. Am. Express Centurion Bank*, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D.Va. Apr. 5, 2016) ("Any violation of the CFPA may not be litigated by Plaintiff because they cannot be enforced by a private individual."). Defendant advanced this argument in its motion for summary judgment (ECF No. 33-1, at 13-15), and Plaintiff did not respond. Summary judgment will accordingly be entered for Defendant as to Count II.

### C.   Count III, Maryland Consumer Protection Act

Plaintiff's final claim alleges a violation of the MCPA (ECF No. 2 ¶¶ 87-99), which prohibits "unfair or deceptive trade practices" and provides a private cause of action, Md. Code Ann., Com. Law §§ 13-301, 13-408. A private party bringing a claim under the MCPA must show "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md. 2012). The injury must be "an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the [ ] misrepresentation." *Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 255 (D.Md.

2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) (alteration in original) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)).

Defendant argues that Plaintiff cannot prove that it made a false or misleading oral or written statement, that she relied on such misrepresentation, or that she suffered damages resulting from her reliance. (ECF No. 33-1, at 15-16). Plaintiff does not identify any specific alleged misrepresentation. Her sole argument on this claim in her opposition to summary judgment, advanced without citations to the record, is that "this case is full of false or misleading oral or written statements," referring the court to her argument on her RESPA claim, and the assertion that she "had no choice but to rely on Defendant's misstatements, as she was attempting to obtain a loan modification" from Defendant. (ECF No. 36, at 6). Plaintiff has failed to make a sufficient showing on these essential elements of her case as to which she would have the burden of proof, and accordingly there is no genuine dispute of material fact here.

Moreover, Plaintiff's only damages are her attorney's fees.[6] Attorney's fees may be recovered by a successful plaintiff under

---

[6] As noted above, Plaintiff's affidavit also states that her damages include "the costs, shame, and embarrassment of filing bankruptcy" and "sleepless nights and stress." (ECF No. 36-1 ¶¶ 16-17). Plaintiff offers no supporting evidence of the costs

the MCPA, but are not themselves damages. *See* Md. Code Ann., Com. Law § 13-408(b) ("Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees"); *Poku v. FDIC*, No. RDB-08-1198, 2011 WL 1599269, at *5 (D.Md. 2011) ("Maryland courts have found that the recovery of attorneys' fees is a collateral issue that may be considered after judgment on a claim.   If and when [plaintiff] secures a verdict under the MCPA at trial, this Court may address the demand for attorneys' fees at that time." (citations omitted)).   To the extent that the attorney's fees described in counsel's affidavit also include fees incurred in connection with the foreclosure action, Plaintiff has not shown any causal connection between those fees and an alleged misrepresentation.   Plaintiff has not offered any evidence of Defendant's misrepresentations, her reasonable reliance on such misrepresentations, or damages.   Accordingly, Plaintiff has not shown a genuine dispute of material fact as to Count III, and summary judgment will be entered in favor of Defendant.

---

she has incurred, and while physical symptoms of mental anguish can establish MCPA liability, *see Ayres v. Ocwen Loan Servicing, LLC*, 129 F.Supp.3d 249, 271 (D.Md. 2015); *Green*, 927 F.Supp.2d at 256, absent any evidence of reliance by Plaintiff on an identified misrepresentation, the causal connection to these symptoms is far too tenuous to survive summary judgment.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
